UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSEPH CURTIS,

    *Plaintiff*,      CASE NO: 1:17-CV-13775

*v*.      DISTRICT JUDGE THOMAS L. LUDINGTON
ST. CLAIR, COUNTY OF, et al.,      MAGISTRATE JUDGE PATRICIA MORRIS

    *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)**

**I.  RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's claims be *sua sponte* **DISMISSED** because the Amended Complaint, (Doc. 32), fails to state any claim upon which relief can be granted. In addition, Plaintiff's Motions To Compel, (Docs. 41, 42, 43, 44, 52), should be **DISMISSED** as moot.

**II.  REPORT**

    **A.  Introduction and Allegations**

Plaintiff is a pre-trial detainee whose cause of action arose while incarcerated at the St. Clair County Jail. (Doc. 32 at PageID.107). Before the Court is his Amended Complaint, which alleges Eighth- and First-Amendment claims under 28 U.S.C. § 1983 against Defendants County of St. Clair, Tim Donnellon, Thomas Buckley, Community Mental Health

1

("CMH"), Hill, Adams, LaBeau, Zalog, Maze, Airention, and Bill Slucher. *See generally* (Doc. 1). He proceeds in this suit *pro se* and *in forma pauperis*. (Doc. 5).

In June 2017, Plaintiff attempted to hang himself in his cell, but his roommate at the time interrupted the attempt and "untied the homemade rope." (Doc. 32 at PageID.108). Plaintiff asked his roommate "not to say anything . . . about the at[t]empt because he di[d]n't want to be placed on [suicide] watch," and his roommate agreed. (*Id.* at PageID.109). In September 2017, Plaintiff again tried to hang himself, and his roommate—a different person than in June—halted the attempt. (*Id.*). Plaintiff also asked this roommate not to speak of the event. (*Id.*). Although "the courts" had referred Plaintiff to "the center for forensics for evaluation" in July 2017, CMH "still did not start treatment . . . [until] around October." (*Id.*). Between May 2017 and October 2017, Plaintiff alleges he sent sixteen emails to CMH detailing his suicidal and homicidal thoughts and requesting mental-health treatment, but that they were "all closed by the f[a]cility staff and never answered or reviewed by Bill Slucher or his staff [*i.e.*, Hill, Zalog, LaBeau, Adams, Maze, and Airington] as they all state closed by f[a]cility staff." (Doc. 32 at PageID.108). In addition, Plaintiff submitted three "diff[e]rent request[s] for grievance[]" forms to voice his consternation, but "none of these request[s] w[]ere me[]t with a grievance form," and as a result, Plaintiff suggests Defendants Hill, Zalog, LaBeau, Adams, Maze, and Airington "acted with deliberate indifference to a serious medical need." (Doc. 32 at PageID.109).

"Upon information and belief," Plaintiff avers that pre-trial detainees received "only 2 to 3 grievance" forms in the year 2017. (*Id.*). This policy, Plaintiff argues, continues to inhibit

2

his (and other pre-trial detainees') ability to settle issues within the facility or "seek[] further litigation" under state or federal law. (Doc. 32 at PageID.109-110).[1] Additionally, Defendants Donnellon, Buckley, and the County of St. Clair employ a policy that limits "indigent inmate[s]" to sending out "2.49¢ legal postage[s] a week mak[]ing it imposs[i]ble for" him and other inmates "to make time sensitive deadlines for the courts." (Doc. 32 at PageID.110). In his view, "[i]f the inst[i]tution subjects you to treatment or conditions that are an atypical and significant hardship in relation to ordinary incidents of prison life, th[e]y must provide you with some level of process." (*Id.*). Moreover, "[t]his restricti[ve] policy" as to postage "stops Plaintiff and other[] inmates from freely accessing the courts at will and is unconst[i]tutional." (*Id.*).

### B. Screening Procedure and Governing Law

In enacting the original *in forma pauperis* ("IFP") statute, Congress recognized that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)). Therefore, Congress enacted a screening procedure, *see* 28 U.S.C. § 1915(e)(2)(B), which requires that the court review all complaints where the plaintiff is proceeding IFP and *sua sponte* dismiss a

---

[1] Plaintiff also, confusingly, alleges that eight of his grievances have been denied. (Doc. 32 at PageID.110). This statement would, if taken at face value, conflict markedly with the notion that Defendants limited pre-trial detainees to two or three grievances per year. Because Pliantiff proceeds *pro se*, however, I construe his statement as meaning that eight *requests for grievance forms* have been denied, which is more consistent with other allegations in the Amended Complaint.

3

case before service of process if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the document and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Rule 8(a) sets forth the basic federal pleading requirement that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Rule 8 requires only that the complaint give the defendant fair notice of the claim and its supporting facts." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001). Despite this relatively low threshold, a complaint must nevertheless contain more than legal labels, conclusions, and a recitation of the elements of a cause of action; it must also contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976).

### C.  Analysis

Plaintiff includes two types of claims in his Amended Complaint: (1) that various defendants were deliberately indifferent to his serious medical needs, and (2) that various defendants interfered with his right to access the courts. I address each category of claims in turn.

#### 1.  Eighth Amendment Deliberate Indifference

In *Estelle v. Gamble*, the Supreme Court held "that deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment's Cruel and Unusual Punishment Clause because it constitutes the "unnecessary and wanton infliction of pain'" and is "repugnant to the conscience of mankind" by offending our "evolving standards of decency." 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 97, 104 (1976)). To establish a cognizable claim, Plaintiff's allegations must show Defendant's 'sufficiently harmful' acts or omissions. *Id.* at 106. "[I]nadvertent failure to provide adequate medical care . . . will not violate the Constitution." *Id.*

The 'deliberate indifference' inquiry incorporates objective and subjective elements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective inquiry asks whether the deprivation was "sufficiently serious," which a claimant satisfies where her condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)) (internal quotation

marks omitted). The subjective inquiry considers whether official's state of mind was sufficiently culpable; it requires a showing that an official "'knows of and disregards an excessive risk to inmate health or safety[.]'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 837). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.*

Plaintiff accuses Defendants Slucher, Hill, Zalog, LaBeau, Adams, Maze and Airington of acting with deliberate indifference to his serious medical needs because his request for grievance forms went unanswered. But his allegations remain deficient in several respects. As an initial matter, Plaintiff fails to allege that any defendants were, in fact, aware of his serious medical need. He suggests, for instance, that CMH staff never reviewed his emails, opting instead to ignore his cries for help. (Doc. 32 at PageID.108). He recounts, as well, how he asked his roommates *not* to report his suicide attempts, implying that Defendants remained unaware and uninterested in his mental-health issues. (Doc. 32 at PageID.108-109). That Defendants did not actually read or believe Plaintiff's kites—however lamentable such a derogation would be, if proved—precludes his recovery on a claim of deliberate indifference, which requires a claimant to show that the tortfeasor "'knows of and disregards'" an objectively serious medical condition. *Harrison*, 539 F.3d at 518 (quoting *Farmer*, 511 U.S. at 837). Plaintiff also fails to identify any particular instance in which a specific defendant ignored a complaint or denied a request for a grievance form, rendering his allegations

irreparably conclusory as to who was personally involved in this alleged constitutional violation. *E.g.*, *Shedden v. United States*, 101 F. App'x 114, 115 (6th Cir. 2004).

Nor does Plaintiff properly state a deliberate indifference claim against County of St. Clair, CMH, Donnellon, or Buckley. As to the latter two defendants, Plaintiff seeks to heap responsibility for employees' alleged misconduct on to Donnellon and Buckley by virtue of their "legal[] responsib[ility] for the overall operations" of his facility, (Doc. 32 at PageID.107), a rationale the Sixth Circuit forbids. *Accord, e.g.*, *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) ("Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it."). And as to the latter two defendants, Plaintiff fails to recognize that imposing § 1983 liability upon governmental entities requires showing "execution of a . . . policy or custom which results in an unconstitutional tort." *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Indeed, Plaintiff does not allege that County of St. Clair or CMH promulgated a policy or custom dictating that requests for grievance forms and kites for medical help were to be ignored.

For these reasons, Plaintiff's deliberate-indifference claims against Defendants should be dismissed on the merits.

### 2. First Amendment Right of Access to the Courts

In *Bounds v. Smith*, the Supreme Court held that the Constitution entitles prisoners to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional

rights to the courts" via "adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 825, 828 (1977). This right was itself fundamental because it empowered prisoners in "original actions seeking new trials, release from confinement, or vindication of fundamental civil rights," which "are the first line of defense against constitutional violations." *Id.* at 827-28. Over time, the Supreme Court explained that standing to bring a right-of-access claim requires a showing of "actual injury," which in turn stems from the nature of the underlying claim. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Justice Scalia, writing for the Court, elaborated on the sorts of claims whose blockage causes actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. *The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.* Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355 (emphasis added). In other words, an underlying claim can 'actually injure' only if it is a direct appeal, a habeas petition, or an "action[] under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights,'" (*i.e.*, conditions of confinement). *Id.* at 354 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). A frivolous underlying claim precludes a finding of actual injury. *See id.* at 353 n.3 ("Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."); *Hadix v.*

8

*Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999) ("By explicitly requiring that plaintiffs show actual prejudice to non-frivolous claims, *Lewis* did in fact change the 'actual injury' requirement as it had previously been applied in this circuit."). The Sixth Circuit has strictly construed the Supreme Court's language, and guarantees to prisoners nothing more than the constitutional minimum illustrated in *Lewis*. *See Thaddeus-X v. Bladder*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (reflecting on the Supreme Court's language in *Lewis* and limiting the right of access to "direct appeals, habeas corpus applications, and civil rights claims only."); *see also Green v. Johnson*, No. 13-12305, 2014 WL 4054334, at *3 (E.D. Mich. Aug. 14, 2014) (discussing the Sixth Circuit's narrow construction of *Lewis*'s language, and adhering closely to it); *Mikko v. Davis*, 342 F. Supp. 2d 643, 646 (E.D. Mich. 2004) (same).[2]

The elements of a viable access-to-courts claim in the Sixth Circuit are: (1) "a non-frivolous underlying claim"; (2) "obstructive actions by state actors"; (3) "'substantial[] prejudice' to the underlying claim that cannot be remedied by the state court"; and (4) "a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (internal citations omitted). Because the underlying claim "is an element that must be described in the complaint," claimants should thus provide a description of the underlying claim sufficient to "give fair notice to a defendant" and "to apply the 'nonfrivolous' test" to its contents.

---

[2] Taken out of context, the standard articulated in *Thaddeus-X* ostensibly contemplates a broader right of access than that articulated in *Lewis*, particularly with respect to the phrase "civil rights claims." *Thaddeus-X*, 175 F.3d at 391. However, the Sixth Circuit frames its language as a *rephrasing* of the same "carefully-bounded right" described in *Lewis*, rather than an *expansion* of the constitutional minimum.

9

*Christopher*, 536 U.S. at 415-16. And, as noted above, the right of access to the courts extends to "direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, at 391. If the plaintiff has been denied access to a meritorious personal injury case in state court, for example, she has no redress in federal court.

Plaintiff alleges that Defendants County of St. Clair, Donnelly, and Buckley have endorsed a policy limiting inmates to "2.49¢ legal postage[s] a week," which impermissibly interferes with Plaintiff's and others' ability "to make time sensitive deadlines for the courts." (Doc. 32 at PageID.110). Plaintiff does not, however, specify what underlying claim was interfered with, or the prejudice suffered as a result. Even if I were to assume the postage limit described in the Amended Complaint embodied an "obstructive" practice, *Flagg*, 715 F.3d at 174, the lack of details supplied in this regard should defeat any claim asserted in relation to this policy. As a result, his First-Amendment denial of his right of access to courts claim is non-justiciable and should be dismissed.

Plaintiff also alleges that County of St. Clair, CMH, Donnellon, and Buckley limited prisoner access to grievances, which I construe as a second allegedly unconstitutional policy. In setting forth his qualms, Plaintiff specifies that he and other detainees struggle to challenge uncompromising prison conditions, including those such as his present difficulty accessing medical care. However, as I explain above, Plaintiff fails to assert a colorable deliberate-indifference claim against any defendant. Without more, the grievance-policy allegations fail to set forth a colorable claim for relief. *Accord, e.g.*, *Young v. Gundy*, 30 F.3d 568, 569-70 (6th Cir. 2002) ("A grievance appeal does not implicate the First Amendment right of access to the

10

courts because there is no inherent constitutional right to an effective prison grievance procedure." (citing *Antonelli v. Sheahan*, 81 F.3d 72, 75 (4th Cir. 1994))); *Olivier v. City of Clarksville*, No. 3:16-CV-03306, 2017 WL 695966, at *3 (M.D. Tenn. Feb. 21, 2017) ("Given that a prisoner does not have a constitutional right to an effective or responsive grievance procedure, any claims based on a Defendant's failure to respond to Plaintiff's grievances do not state a claim upon which relief can be granted."), *appeal dismissed sub nom. Olivier v. City of Clarksville, TN*, No. 17-5243, 2017 WL 3754266 (6th Cir. Apr. 18, 2017); *Easterly v. Budd*, No. 4:06 CV 00186, 2006 WL 2404143, at *7 (N.D. Ohio Aug. 18, 2006) (collecting cases and reminding the plaintiff that "all circuits to consider this issue have found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures"). Claims attacking this policy should be discarded on the merits.

### D. Conclusion

For the reasons set forth above, **IT IS RECOMMENDED** that Plaintiff's claims be *sua sponte* **DISMISSED** because the Amended Complaint, (Doc. 32), fails to state any claim upon which relief can be granted. In addition, Plaintiff's Motions To Compel, (Docs. 41, 42, 43, 44, 52), should be **DISMISSED** as moot.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R.

11

Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 13, 2018            S/ PATRICIA T. MORRIS
                                                   Patricia T. Morris
                                                   United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Joseph Curtis 171488 at St. Clair County Intervention Center, 1170 Michigan Road, Port Huron, MI 48060.

Date: June 13, 2018                                          By s/Kristen Castaneda
                                                                                  Case Manager